## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CODY MURPHY, on behalf of her children, R.M. and C.M., minors, and TRACIE NASCA, on behalf of her children, J.N. and L.N, minors, individual and on behalf of all others similarly situated,** | Case No.: |
| | **CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |
| **Plaintiffs,** | |
| **-against-** | |
| **SUNFLOWER MEDICAL GROUP, P.A.,** | |
| **Defendant.** | |

## <u>CLASS ACTION COMPLAINT</u>

CODY MURPHY, individually and on behalf of her minor children, R.M. and C.M., and all others similarly situated ("Murphy"), and TRACIE NASCA, individually and on behalf of her minor children, J.N. and L.N, and all others similarly situated ("Nasca") ("Plaintiffs") bring this action against SUNFLOWER MEDICAL GROUP, P.A. ("Sunflower" or "Defendant") on behalf of all Class Members similarly situated, and allege as follows upon personal knowledge as to Plaintiffs' own actions and upon Plaintiffs' counsels' investigation; facts of public record; and information and belief as to all other allegations.

## <u>INTRODUCTION</u>

1.      Plaintiffs bring this action against Defendant for its failure to properly secure and safeguard Plaintiffs' and Class Members' personally identifiable information ("PII") and other private information, such as, and without limitation, account numbers and health insurance

information ("Private Information") in a data breach ("Data Breach") of Defendant's network environment that occurred on or about December 15, 2024.

2.     Defendant learned of the Data Breach on January 7, 2025 but did not disclosure it publicly until March 7, 2025.

3.     Defendant confirmed that Plaintiffs' PPI, including their names, addresses, dates of birth, driver's license numbers, medical treatment/clinical information, and health information was stolen on February 24, 2025 in connection with the Data Breach but Defendant did not notify Plaintiffs until March 7, 2025.

4.     The PII and Private Information involved in the Data Breach included the individual's full name in combination with one or more of the following: their date of birth, driver's license or state ID, social security number, address, medical treatment/clinic information, health insurance information, and medical information.

5.     Plaintiffs' claims herein arise from Defendant's failure to adequately secure and safeguard Private Information and PII entrusted to Defendant for authorized use only, and Defendant's concomitant obligation to properly store and transfer said information.

6.     Plaintiffs and Class Members seek damages, injunctive and declaratory relief from Defendant, for injuries sustained and that will be sustained as a direct and proximate result of Defendant's failure to maintain Plaintiffs' and Class Members' PII[1] under industry standards, and Defendant's failure to keep notice of the Data Breach from Plaintiffs and Class members until approximately well after its initial occurrence.

---

[1] PII includes all information that on its face expressly identifies an individual, consistent with 2 C.F.R. § 200.79; it is also generally defined to include certain identifiers that do not on its face name an individual, however are particularly sensitive and/or valuable if it was in the possession of a bad actor (for example, Social Security numbers, driver's license numbers, passport numbers, or banking information).

7.      Defendant failed to take precautions reasonably calculated to keep Plaintiffs' and Class Members' Private Information secure.

8.      Defendant owes Plaintiffs and Class Members the duty to take all reasonable and necessary measures to keep the PII and Private Information collected safe and secure from unauthorized access.

9.      Defendant solicited, collected, used, and derived benefits from the PII and Private Information, but failed to implement or maintain adequate security practices to protect the PII and Private Information (together, "Personal Information").

10.      Defendant is liable for the Data Breach and the foreseeably consequent unlawful access to use of Plaintiff's and Class Members' Personal Information, including out-of-pocket expenses, and those associated with reasonable mitigation measures that Plaintiffs and Class Members may employ, and other damages.

11.      In the ordinary course of Defendant's business, it acquires, possesses, analyzes, and utilizes Plaintiffs' and Class Members' Personal Information.

12.      Plaintiffs and Class Members' Personal Information, entrusted to Defendant on the mutual understanding that Defendant would protect same against disclosure, was targeted, compromised, and unlawfully accessed in the Data Breach.

13.      Defendant had a duty to implement reasonable data security practices necessary to protect sensitive, confidential and personal information entrusted to it because it is reasonably foreseeable that exposure of their Personal Information to unknown and criminal third parties, particularly hackers, would injure Plaintiffs and Class Members, including financial identity theft and other long-ranging financial and/or identity impersonation problems.

3

14.     Attempting to mitigate the resulting injuries and risks requires taking preventive or protective measures that require significant resources, including money and time, to monitor credit, financial accounts, health records, and email accounts.

15.     Defendant's notices were not only belated and injurious in this way alone, but they also lack specificity, failing to provide meaningful information to Plaintiffs and the Class Members of the Data Breach's critical facts.  Without specifics, they were and remain severely hampered in the ability to take measured mitigating steps against the resulting harm from the Data Breach.

16.     Plaintiffs and Class Members now face a heightened and imminent risk of fraud, identity theft, health insurance benefit misappropriation, health privacy intrusion, and private information dissemination on the dark web.  This risk will persist for their lifetimes.

17.     Plaintiffs and Class Members suffered tangible injuries, including the diminished value of their Personal Information, lost time and opportunity costs from mitigating the Data Breach consequences, loss of the benefit of their bargain with Defendant to maintain their Personal Information in a reasonably protected manner, and the actual misuse of their compromised data, such as increased spam communications.

18.     As a result, Plaintiffs and Class Members must spend significant additional time, money, and energy to protect themselves from these potential crimes to the extent possible.  All of this will need to be done to attempt to thwart the clear intent of hackers when they break into databases to steal this information to monetize this data with fraudulent and criminal transactions.

19.     Plaintiffs brings this action on behalf of all persons whose Personal Information was compromised as a result of Defendant's failure to: (i) adequately protect the Personal

Information of Plaintiffs and Class Members; (ii) warn Plaintiffs and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected Personal Information using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiffs and Class Members of the Data Breach.

20.     Plaintiffs, individually and on behalf of Class Members, assert the following claims against Defendant: (I) Negligence, (II) Negligence *Per Se*, (III) Unjust Enrichment, and (IV) Breach of Implied Contract.  Plaintiffs, individually and on behalf of Class Members, seek damages as well as injunctive and declaratory relief.

## PARTIES

21.     Plaintiff CODY MURPHY ("Murphy") is and was at all times relevant to this action, a natural person residing in the State of Kansas, Johnson County.  Murphy brings this suit in her personal capacity and on behalf of her minor children: R.M. and C.M, and all Class Members.

22.     Plaintiff TRACIE NASCA ("Nasca") is and was at all times relevant to this action, a natural person residing in the State of Kansas, Wyandotte County.  Nasca brings this suit in her personal capacity and on behalf of her minor children: J.N. and L.N., and all Class Member.

23.     Defendant SUNFLOWER MEDICAL GROUP, P.A. ("Sunflower Medical") is a professional healthcare provider headquartered in Roeland Park, Kansas, having its principal place of business at 5675 Roe Blvd., Roeland Park, Kansas, Johnson County.

## JURISDICTION

24.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act 28 USC 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000,

exclusive of interest and costs, (2) the action is a class action, (3) there are members of the proposed Class who are diverse from Defendant, and (4) there are more than 100 proposed Class members.

25.     This Court has personal jurisdiction over Defendant because Defendant maintains a principal place of business in this District, Defendant conducts substantial business in this District, and the events giving rise to Plaintiff's claims arise out of Defendant's contacts with this District.

26.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1), (2) because Defendant is a resident and citizen of this District and a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this district.

## **BACKGROUND**

27.     Sunflower Medical Group operates four urgent care locations and multiple facilities that cover primary care, obstetrics, and lab tests in Kansas City, Lenexa, and Roeland Park, Kansas. Despite its responsibility to protect patient data, the organization experienced a significant security failure. Sunflower Medical Group has posted information regarding the data security incident on its website.

28.     Sunflower Medical Group Data Breach began December 15, 2024, was discovered January 7, 2025, and public notification given on March 11, 2025. Sunflower Medical Group's Notification Publicly was 64 days from discovery.

29.     The 64 days between the discovery of the breach and notification potentially affected individuals is a serious concern. Although Data Breaches notifications are regulated federally, and vary by state, they typically follow a 30–45-day consumer notification timeline, Kan. Stat. § 50-7a01 et seq. Kansas requires businesses to notify affected residents "in the most

expedient time possible and without unreasonable delay" following the discovery of a data breach. The breach also affects residents of Kansas City, Missouri, given the proximity of Sunflower Medical Group's facilities.

30. The fact that Sunflower Medical Group offered credit monitoring services only to those whose SSNs or driver's license numbers were involved is also concerning. This suggests a potential downplaying of the risk to individuals whose other sensitive data (medical information, health insurance details) was exposed.

31. Patient care affected by the Sunflower Medical Group Data Breach includes Medical, Primary Care, Obstetrics, and Lab Testing.

32. The Sunflower Medical Group data breach places over 220,000 individuals at significant risk of: (a) Medical Identity Theft: Stolen PHI can be used to obtain medical services, prescriptions, or equipment fraudulently, potentially leading to inaccurate medical records and financial burdens for victims; (b) Financial Identity Theft: Stolen SSNs and other PII can be used to open fraudulent accounts, apply for loans, and commit other forms of financial fraud; (c) Targeted Phishing Attacks: The detailed personal and medical information makes victims highly susceptible to sophisticated phishing and social engineering attacks; (d) Privacy Violations and Potential Blackmail: The exposure of sensitive medical information and personal correspondence can lead to significant privacy violations and even potential blackmail; and (e) Emotional Distress and Anxiety: The breach of such personal and private information can cause significant emotional distress and anxiety for victims.

33. The Data Breach highlights the known-vulnerability of companies handling large volumes of personal data. The details surrounding the Data Breach, including the perpetrator, root cause, exploited vulnerabilities, and remedial measures, remain undisclosed.

34.     Despite the vested interest of Plaintiffs and Class Members in protecting their private information, crucial details of the Data Breach have not been clarified or explained to them.

35.     The Data Breach was a direct consequence of Defendant's failure to implement and adhere to fundamental security protocols and its own policies, thereby compromising the protection of clients' personally identifiable information (PII).

36.     Defendant is bound by obligations under the FTC Act, contractual agreements, common law, and industry standards to maintain the confidentiality and security of this sensitive information.

37.     Defendant was fully aware that the private information it collected was highly sensitive and valuable to those who might misuse it, and that a breach of its systems would expose this information, significantly increasing the risk of identity theft, financial fraud, and unauthorized access to sensitive health data.

38.     These risks are not hypothetical; numerous high-profile breaches have occurred at companies like Equifax, Facebook, Yahoo, Marriott, and Anthem.

39.     Personal identifiable information (PII) is a prime target for hackers due to its high value.  The proliferation of anonymous cybercrime forums on the Dark Web has created a thriving marketplace for stolen data, making it easy for hackers to sell compromised information.

40.     The prevalence of data breaches and identity theft has surged in recent years, resulting in significant economic losses for individuals, businesses, and government entities.

41.     Every year, the number of publicly disclosed data breaches increases, exposing billions of records, and this increases commensurate with the increase in identity theft complaints.

42.    Cybercriminals increasingly target personally identifiable information (PII) due to its high value.  The extensive data compromised in breaches makes individuals vulnerable to various forms of fraud, including identity theft, tax fraud, and financial fraud.  It is well known that PII records are highly valuable to criminals, often selling for significantly more than credit card information.

43.    Victims of data breaches often face severe consequences, including false accusations of drug trafficking, employment difficulties, or even job loss.  Identity thieves can exploit stolen data to impersonate victims, harass them, or track their activities.  With just a name and date of birth, thieves can use social engineering techniques—such as phishing or spam messages—to obtain more sensitive information like login credentials or Social Security numbers. As technology advances, hackers can create detailed profiles by linking disparate pieces of information, a phenomenon known as the "mosaic effect."

44.    Even if certain data was not directly compromised in a breach, unauthorized parties can still use stolen information to access email and financial accounts, facilitating various forms of fraud.  The FTC advises victims to take protective measures, including placing fraud alerts, reviewing credit reports, removing fraudulent charges, and freezing credit.  However, these steps only mitigate the risks and do not guarantee complete protection against identity theft.

45.    Stolen personal data, such as Social Security numbers and other personally identifiable information (PII), can be used for numerous crimes, including identity theft, credit card fraud, utility fraud, bank fraud, obtaining false identification, claiming government benefits, and filing fraudulent tax returns.  These activities underscore the importance of safeguarding personal information to prevent such misuse.

46.     Social Security numbers, compromised by the Data Breach, are particularly sensitive because they can be used for various fraudulent activities and are difficult to change. The Social Security Administration warns that losing a Social Security number can lead to identity theft and financial fraud. Identity thieves can use the number to obtain additional personal information, apply for credit in the victim's name, and damage their credit by failing to pay bills. Victims may only discover this when they are denied credit or receive calls from unknown creditors.

47.     Changing a stolen Social Security number is challenging.  It requires significant paperwork and evidence of actual misuse, meaning preventive measures are not allowed.  Even if a new number is obtained, it may not be effective, as credit bureaus and banks can quickly link it to the old number, inheriting any existing issues.  There can be a significant delay between when harm occurs and when it is discovered, and between when personal identifiable information (PII) is stolen and misused.

48.     According to the U.S. Government Accountability Office, stolen data may be held for over a year before being used for identity theft, and fraudulent use can continue for years after the data is sold or posted online.  Even without financial information, stolen PII poses a substantial risk of identity theft, particularly through targeted attacks like social engineering and spear phishing.  These methods use stolen PII to gain trust and deceive victims into providing additional information.  Given the value of PII to cybercriminals, the defendant should have been aware of the foreseeable risks of inadequate cybersecurity measures.

49.     Defendant failed to employ reasonable security measures suitable for the sensitive information it maintained for Plaintiffs and Class Members.  This oversight led to the exposure of private data, which could have been prevented through practices like encryption and timely

deletion.  To prevent the data breach, Defendant should have properly encrypted and protected its equipment and files containing private information. Implementing robust security measures, as recommended by the U.S. Government, would have been effective.

50.     Given the storage of private information for Plaintiffs and Class Members, Defendant should have implemented these measures to prevent cyberattacks.  The occurrence of the Data Breach indicates a failure to adequately implement these security protocols, resulting in unauthorized access to the private data of over thousands of individuals, including Plaintiffs and Class Members.

51.     The Federal Trade Commission Act prohibits businesses from engaging in unfair or deceptive acts or practices, including failing to maintain reasonable data security for sensitive personal information, which the FTC considers an unfair practice.

52.     The FTC has issued guidelines emphasizing the importance of integrating data security into all business decisions.  These guidelines recommend protecting customer information, securely disposing of unnecessary data, encrypting stored information, identifying network vulnerabilities, and implementing policies to address security issues.

53.     The FTC advises companies to limit data retention to only what is necessary, restrict access to sensitive data, use complex passwords, monitor for suspicious activity, and ensure third-party providers implement reasonable security measures.

54.     Enforcement actions have been taken against businesses that fail to protect customer data adequately, with orders clarifying the necessary measures to meet data security obligations.

55.     Industry standards include educating employees, using strong passwords, multi-layer security, encryption, multi-factor authentication, and limiting access to sensitive data.

56.     Defendant failed to follow these standards and did not comply with frameworks like the NIST Cybersecurity Framework and the Center for Internet Security's Critical Security Controls.

57.     The Private Information maintained by Defendant is highly sensitive and vulnerable to misuse by third parties for identity theft and fraud.  Had Defendant remedied its security deficiencies, followed industry guidelines, and adopted expert-recommended measures, it could have prevented the attack and subsequent theft of Plaintiffs and Class Member data.

58.     Plaintiffs and Class Members have suffered significant harm due to Defendant's conduct.

59.     Upon information and belief, Defendant made promises and representations to individuals' including Plaintiffs and Class Members, that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.

60.     Plaintiffs and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access.

61.     As a result of collecting and storing the Private Information of Plaintiffs and Class Members for their own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff's and the Class Members' Private Information from disclosure to third parties.

62.     Identity theft risks are serious, potentially leading to financial losses, damaged credit records, and even job or loan denials.  To mitigate these risks, they must invest time and

money in monitoring accounts, changing passwords, and procuring identity theft protection services.

63.    Once Private Information is exposed, it cannot be fully secured against future misuse, necessitating ongoing vigilance.  The value of their PII has been diminished, and they face increased risks of identity theft and financial fraud.  Emotional distress and the continued vulnerability of their information in Defendant's systems exacerbate their situation.

64.    Defendant admits that an unauthorized third party accessed its IT Network.

65.    Defendant failed to take adequate measures to protect its computer systems against unauthorized access.

66.    The Private Information that Defendant allowed to be exposed in the Data Breach is the type of private information that Defendant knew or should have known would be the target of cyberattacks.

67.    Despite its own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices, Defendant failed to disclose that its systems and security practices were inadequate to reasonably safeguard individuals' Private Information.

68.    As a result of the Data Breach, the Private Information of Plaintiffs and Class Members has been exposed to criminals for misuse.

69.    The injuries suffered by Plaintiffs and Class Members, or likely to suffer as a direct result of Defendant's Data Breach, include: (a) theft of their Private Information; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this Breach; (d) invasion of privacy; (e) the emotional distress,

stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their Private Information against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further injurious breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' Private Information.

70.    In addition to a remedy for economic harm, Plaintiffs and Class Members maintain an interest in ensuring that their Private Information is secure, remains secure, and is not subject to further misappropriation and theft.

71.    Defendant disregarded the rights of Plaintiffs and Class Members by (a) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (b) failing to disclose that it did not have adequately robust security protocols and training practices in place to safeguard Plaintiff's and Class Members' Private Information; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiffs and Class Members prompt and accurate notice of the Data Breach.

**PLAINTIFFS ALLEGATIONS**

72.    Plaintiffs utilized Defendant's services, which required Plaintiffs to provide private information.

73.    Plaintiffs maintain this information securely and only share it when necessary.

74.    Plaintiffs would not have entrusted it to Defendant had Plaintiffs known about Defendant's inadequate data security policies.

75.    Plaintiffs were notified of the Data Breach nearly eight months after it occurred, as Plaintiffs received a notice email from Defendant dated March 7, 2025.

76.    Following the Data Breach, Plaintiffs took reasonable steps to mitigate its impact, including verifying the breach, reviewing credit monitoring services, and monitoring financial accounts. This effort consumed significant time that could have been spent on other activities.

77.    As a result of the breach, Plaintiffs suffered actual injuries, including invasion of privacy, theft of Plaintiffs' private information, lost time, and increased risk of future unauthorized access.

78.    Plaintiffs believe Plaintiffs' private information may have been disseminated on the dark web due to the breach.  Plaintiffs anticipate ongoing expenses and time commitments to address these harms.  The breach has placed Plaintiffs at a heightened risk of identity theft and fraud for years to come.

79.    Plaintiffs remain concerned about Plaintiffs' information, which is believed to be stored by Defendant and vulnerable to future breaches.

**CLASS ALLEGATIONS**

80.    Plaintiffs bring this action individually and on behalf of others similarly situated under Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

15

81.    Specifically, Plaintiffs propose the following class definition, subject to any appropriate amendments: All individuals residing in the United States who were impacted by the Data Breach as announced by Defendant in March 2025 ("Class").

82.    Excluded from the Class is Defendant, its subsidiaries, officers, directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families, all judges assigned to hear any aspect of this litigation, their immediate family members; and those individuals who make a timely and effective election to be excluded from this matter using the correct protocol for opting out.

83.    The proposed class definition is based on current information and may be modified as necessary during discovery or when moving for class certification to reflect any new or changed facts.

84.    **Numerosity**: The Class likely includes hundreds of thousands of members, with exact numbers and identities determinable from Defendant's records, including those related to the Data Breach.

85.    **Commonality**: This action involves common questions of law and fact that predominate over individual issues. These include whether Defendant:

a)    Failed to timely notify Plaintiffs and Class Members of the Data Breach;

b)    Had a duty to protect their personally identifiable information (PII);

c)    Failed to safeguard PII adequately;

d)    Was negligent in handling PII;

e)    Violated laws by failing to notify of the breach;

f)    Failed to implement reasonable security procedures;

g)    Negligently caused the Data Breach;

h)    Entered into an implied contract and breached it;

i)    Was unjustly enriched;

j)    Should provide damages and/or injunctive relief.

86.    **Typicality**: Plaintiff's claims are typical of the Class, as they arise from the same unlawful conduct and legal theories. All Class Members had their PII exposed due to Defendant's actions.

87.    **Policies Generally Applicable to the Class**: This class action is appropriate because Defendant's policies apply uniformly to the Class, necessitating consistent relief.

88.    **Adequacy of Representation**: Plaintiffs are adequate representatives, with no conflicting interests.  Plaintiffs' claims align with those of the Class.  In addition, Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiffs and the Class Members are substantially identical as explained above.

89.    **Superiority**: Class action is superior due to impracticality of individual litigation, offering economies of scale and uniform decision-making.  It allows for efficient adjudication without unnecessary duplication of effort and expense.  Class Action treatment is a superior approach for fair and efficient adjudication, enabling numerous Class Members to pursue common claims simultaneously.  It prevents unnecessary duplication and allows for modest claims to be litigated efficiently, which would otherwise be economically impractical for individual Class Members.

90.    **Manageability**: The litigation is manageable due to Defendant's uniform conduct and consistent legal provisions, ensuring consistent outcomes and avoiding unnecessary duplication. The prosecution of this lawsuit as a class action presents no significant manageability issues.  Adequate notice can be provided to Class Members using information from Defendant's records.

91.    Class certification, injunctive relief, and declaratory relief are appropriate due to Defendant's actions affecting the Class as a whole.

92.    Key issues suitable for certification include:

a)    Whether Defendant timely notified the Plaintiffs and Class of the data breach;

b)    Whether Defendant owed a duty to exercise due care in handling private information;

c)    The reasonableness of Defendant's security measures;

d)    Whether Defendant's failure to implement adequate security was negligent;

e)    Whether Defendant failed to take reasonable steps to safeguard private information;

f)    Whether following FTC recommendations could have prevented the breach.

93.    **Predominance:** Common questions of law and fact predominate over individual issues, as similar violations, practices, and injuries are involved. Defendant's liability and damages are common to all Class Members.

94.    **Injunctive Relief:** Injunctive relief is appropriate due to Defendant's actions affecting the Class generally.  Without a Class-wide injunction, Defendant may continue to fail in securing Class Members' private information, refuse proper notification regarding the data breach, and act unlawfully as alleged.

95.    **Ascertainability:** Class Members are ascertainable based on objective criteria and can be identified through Defendant's records.

## CAUSES OF ACTION

### FIRST COUNT -NEGLIGENCE AND NEGLIGENCE *PER SE*
### (On Behalf of Plaintiffs and all Class Members)

96.    Plaintiffs incorporate by reference all preceding allegations and allege further.

97.    Defendant owed Plaintiffs and Class Members a duty of care to secure and safeguard their personal identifiable information (PII) using commercially reasonable methods. This duty arose when Defendant accepted and stored Plaintiffs' and Class Members' PII on its systems.

98.    Defendant's obligations included exercising reasonable care in obtaining, retaining, securing, and protecting PII; implementing industry-standard security procedures; promptly detecting and responding to data breaches; and notifying affected individuals of any security incidents promptly and with specificity.

99.    Defendant was aware that PII is private and confidential, and thus, it had a duty not to expose Plaintiffs and Class Members to unreasonable risks of harm.

100.    Defendant knew or should have known about the risks associated with collecting and storing PII, the vulnerabilities of its systems, and the importance of adequate security.

101.    Despite this knowledge, Defendant failed to ensure its systems were sufficient to protect PII.

102.    This failure constitutes a breach of its duties to Plaintiffs and Class Members.

103.    Defendant had independent duties under state and federal laws to safeguard PII and notify affected parties of breaches.

104.    These obligations are separate from any contractual agreements.

105.    Defendant breached its general duty of care by failing to provide adequate security practices, timely disclose breaches, protect PII, and implement necessary security measures.

106.    Defendant's breaches included failing to provide reasonable security systems, timely disclose breaches, protect PII, implement breach detection processes, encrypt PII, and train employees properly.

107.    These failures were wrongful, reckless, and grossly negligent, given the foreseeable risks and known threats.

108.    There is a close causal connection between Defendant's failure to implement security measures and the harm suffered.    Defendant's actions constitute common law negligence.

109.    Defendant violated 15 U.S.C. § 45 by failing to use reasonable measures to protect PII, contrary to industry standards and FTC guidelines.    This conduct was particularly unreasonable given the nature and amount of PII involved.

110.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and Class Members have been caused to suffer and will continue to suffer the continued risks of exposure of their PII, which the Defendant still possesses, and may result in further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII in its continued possession.

## SECOND COUNT – BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiffs and all Class Members)

106.    Plaintiffs incorporate by reference all preceding allegations and allege further.

107.    By providing personally identifiable information (PII) to Defendant in exchange for services, Plaintiffs and Class Members entered into implied contracts.

108.    These contracts were based on the reasonable expectation that Defendant would protect the information with due care.

109.    Defendant actively solicited and invited Plaintiffs and Class Members to share their PII as part of its standard business practices.

110.    In response, Plaintiffs and Class Members accepted these offers and provided their PII, trusting that Defendant would handle it securely.

111.    In entering these implied contracts, Plaintiffs and Class Members reasonably assumed that Defendant's data security practices complied with relevant laws, regulations, and industry standards.

112.    They also expected that Defendant would allocate sufficient resources to maintain adequate data security.

113.    By providing services and payments to Defendant, Class Members relied on the understanding that Defendant would use part of its earnings to ensure robust data security measures. Defendant failed to meet these expectations.

114.    The implied contract between Plaintiff, Class Members, and Defendant was predicated on the understanding that Defendant would keep their PII reasonably secure.

115.    Without this assurance, Plaintiffs and Class Members would not have entrusted their sensitive information to Defendant.

116.    Furthermore, Class Members relied on Defendant's implied promise to monitor its systems and networks to ensure the adoption of reasonable data security measures.

117.    Plaintiffs and Class Members fulfilled their obligations under the contracts implied by providing their PII in good faith.

118.    Defendant breached these implied contracts by failing to safeguard and protect the PII and Private Information of Plaintiffs and Class Members.

119.    Plaintiffs and Class Members are entitled to compensatory, consequential, and nominal damages resulting from the data breach.

120.    Plaintiffs and Class Members seek injunctive relief, requiring Defendant to enhance its data security systems and monitoring procedures, undergo annual audits, and provide immediate and adequate credit monitoring to Plaintiffs and Class Members.

### THIRD COUNT - UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and All Class Members)

121.    Plaintiffs incorporate by reference all preceding allegations and allege further.

122.    Plaintiffs bring this claim in the alternative to breach of implied contract.

123.    Plaintiffs and Class Members conferred significant benefits upon Defendant by providing their private information.

124.    In exchange, they expected to have their private information protected with adequate data security measures.

125.    Defendant was aware of these benefits conferred, accepted them, and profited from the transactions by using their private information for business purposes.

126.    Upon information and belief, Defendant funds its data security measures from its general revenue, which includes payments made on behalf of Plaintiffs and Class Members.

127.    A portion of these payments should have been allocated to provide a reasonable level of data security.

128.    Defendant, however, failed to secure the private information adequately, despite deriving revenue from it and relying on it for essential business functions.

129.    Had Plaintiffs and Class Members known about Defendant's inadequate security practices; they would not have provided their private information.

130.    Defendant enriched itself by diverting funds meant for data security to increase its profits, using cheaper and ineffective measures instead.

131.    This decision directly and proximately harmed Plaintiffs and Class Members.

132.    As a result of Defendant's actions, Plaintiffs and Class Members suffered various injuries, including invasion of privacy, theft of private information, lost value of private information, time and opportunity costs to mitigate the breach, loss of benefit of the bargain, and increased risk to their private information.

133.    Plaintiffs and Class Members have no adequate remedy at law.

134.    Under principles of equity and good conscience, Defendant should not retain the money wrongly obtained by Defendant on behalf of Plaintiffs and Class Members, nor profit from the use of Plaintiff's and Class Members' PII.

135.    Defendant should be compelled to disgorge these proceeds into a common fund or constructive trust for the benefit of Plaintiffs and Class Members.

## JURY TRIAL DEMANDED

136.    Plaintiffs demand a trial by jury on all claims so triable.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant judgment as follows:

A. For an Order to certify this action as a class action and appoint Plaintiffs and Plaintiffs' counsel to represent the Class, ensuring that all affected parties are adequately represented and protected.

B. For an Order declaring the misconduct alleged herein to be unlawful as arising under the law set forth herein.

C. For damages in an amount to bet determined at trial, including pre-judgment interest, statutory damages, and penalties.

D. For an Order enjoining Defendant from engaging in the wrongful conduct alleged herein, specifically the misuse and/or disclosure of Plaintiffs' and Class Members' private information. Additionally, Defendant should be compelled to provide prompt, complete, and accurate disclosures to Plaintiffs and Class Members regarding the data breach.

E. For an Order compelling Defendant to implement and maintain robust methods and policies for client data collection, storage, and safety. Furthermore, Defendant should disclose with specificity the type of private information compromised during the data breach, ensuring transparency and accountability.

F. For injunctive relief, including but not limited to the following measures necessary to protect the interests of Plaintiffs and Class Members:

   i. Prohibiting Defendant from engaging in the wrongful and unlawful acts described herein.

   ii. Mandating Defendant to protect all collected data through encryption, in accordance with applicable regulations, industry standards, and federal, state, or local laws.

iii.  Requiring Defendant to delete, destroy, and purge the private information of Plaintiffs and Class Members unless justified retention is demonstrated, balancing privacy interests against business needs.

iv.  Compelling Defendant to establish and maintain a comprehensive Information Security Program to safeguard the confidentiality and integrity of private information.

v.  Prohibiting Defendant from storing private information on cloud-based databases.

vi.  Mandating Defendant to engage independent third-party security auditors and internal personnel to conduct periodic testing, including simulated attacks and penetration tests, and to promptly address any identified issues.

vii.  Requiring Defendant to engage independent third-party security auditors and internal personnel for automated security monitoring.

viii.  Mandating Defendant to audit, test, and train its security personnel on new or modified procedures.

ix.  Requiring Defendant to segment data using firewalls and access controls to prevent unauthorized access across its network.

x.  Mandating regular database scanning and security checks.

xi.  Establishing an information security training program with at least annual training for all clients, tailored to their responsibilities in handling personal identifying information.

xii.  Conducting routine internal training and education, including annual updates for security personnel on breach identification and response.

xiii.    Implementing tests to assess clients' knowledge of education programs and compliance with policies.

xiv.    Developing a threat management program to monitor networks for internal and external threats, ensuring monitoring tools are configured, tested, and updated.

xv.    Educating Class Members about the risks associated with the loss of their confidential information and steps to protect themselves.

xvi.    Implementing logging and monitoring programs to track server traffic.

G.    Ordering Defendant to provide at least five years of credit monitoring services for Plaintiffs and the Class to mitigate potential financial harm.

H.    For an award of attorneys' fees and costs, including expert witness fees, to compensate for the legal efforts expended in this matter.

I.    Such other and further relief as this Court may deem just and proper.


**KAPKE & WILLERTH LLC**

_/s/: George E. Kapke, Jr._
George E. Kapke, Jr.   KS# 21102
Michael J. Fleming,  KS #20291
3304 NE Ralph Powell Road
Lee's Sumit, MO   64064
Tel.: (816) 461-3800
ted@kapkewillerth.com
mike@kapkewillerth.com

**WOODS LONGERGAN PLLC**
James F. Woods, Esq. (pro hac vice forthcoming)
Annie E. Causey, Esq. (pro hac vice forthcoming)
60 East 42nd Street, Suite 1410
New York, NY 10165
Tel.: (212) 684-2500
jwoods@woodslaw.com
acausey@woodslaw.com

*Attorneys for Plaintiff*